# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WILLIAM FIGARELLI**
    Plaintiff,

v.                                                           Case No. 17-CV-1017

**NANCY A. BERRYHILL,**
    *Deputy Commissioner of Operations,*
     *Social Security Administration,*

    Defendant.

## DECISION AND ORDER

William Figarelli alleges disability based on visual limitations and mental impairments. After the Social Security Administration denied his applications for disability benefits, Mr. Figarelli requested and received a hearing before an Administrative Law Judge (ALJ). The ALJ determined that Mr. Figarelli remained capable of working notwithstanding his impairments. Mr. Figarelli now seeks judicial review of that decision.

Mr. Figarelli argues that the ALJ erred in determining his residual functional capacity and finding him capable to work his past relevant job as a housekeeper. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. Because the ALJ's decision is not supported by substantial evidence, his decision denying Mr. Figarelli disability benefits will be reversed and this matter will be remanded for further proceedings consistent with this Decision and Order.

I.      Background

William Figarelli was born on March 7, 1963. Transcript 37. As of December 15, 2016, Mr. Figarelli was unmarried and living alone. Tr. 38. Mr. Figarelli did not have any income but was selling his personal items to try and stay afloat. Tr. 46. He previously worked as a furnace operator, housekeeper, and primary caregiver but stopped working in 2014 minus doing odd jobs for friends and family. Tr. 17.

Mr. Figarelli suffers from hypertension, hypertensive retinopathy, and an unspecified neurodevelopmental disorder. Tr. 18. On December 12, 2014, Mr. Figarelli applied for social security disability insurance and supplemental security income, alleging an onset date of January 1, 2010. Tr.15. After the Social Security Administration denied his applications initially and upon reconsideration, Mr. Figarelli requested and received a hearing before an administrative law judge. Tr. 15. Mr. Figarelli was represented by counsel at the December 15, 2016 hearing, and at that time he amended his onset date to December 12, 2014, rendering his title II claim moot. Tr. 15. The ALJ heard testimony from Mr. Figarelli and a vocational expert. Tr. 31-74.

The ALJ followed the five-step sequential evaluation process and on February 22, 2017, he issued a decision unfavorable to Mr. Figarelli. Tr. 15-24. The ALJ determined that (1) Mr. Figarelli had not engaged in substantial gainful activity since the amended alleged onset date; (2) Mr. Figarelli suffered from three severe impairments: hypertension, hypertensive retinopathy, and an unspecified neurological disorder; and (3) Mr. Figarelli did not suffer from an impairment or

combination of impairments that meets or medically equals the severity of a presumptively disabling impairment. Consequently, according to the ALJ, Mr. Figarelli has the residual functional capacity (RFC) to perform a full range of work at all exertional levels light work with the following nonexertional limitations: (a) no occupations requiring fine visual acuity, working with small objects, or reading fine print/computer screens; (b) no exposure to hazards such as moving machinery or unprotected heights; and (c) no occupations that require driving or operating heavy machinery. Mr. Figarelli is further limited to performing simple, routine tasks. The ALJ then found that, given this RFC, (4) Mr. Figarelli remained capable of performing his past relevant work as a housekeeper and cleaner; and that (5) Mr. Figarelli remained capable of performing other jobs that exist in the national economy. *See* Tr. 15-23. Based on those findings, the ALJ concluded that Mr. Figarelli was not disabled.

Thereafter, the Appeals Council denied Mr. Figarelli's request for review, Tr. 1-6, making the ALJ's decision the final decision of the Commissioner of Social Security. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Mr. Figarelli filed this action on July 24, 2017, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). Complaint, ECF No. 1. The matter was reassigned to this Court after both parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 5 & 8 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). It is now fully briefed and

ready for disposition. *See* Pl.'s Br., ECF No. 15; Def.'s Mem. in Support of the Commissioner's Decision, ECF No. 20; and Pl.' s Reply Br., ECF. No 22.

**II.     Standard of Review**

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Judicial review is limited to determining whether the Commissioner's final decision is supported by "substantial evidence." *See* § 405(g); *see also Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore*, 743 F.3d at 1120–21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

In reviewing the record, this Court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Rather, the Court must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Moore*, 743 F.3d at 1121. The ALJ's

4

decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837. Likewise, the Court must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121.

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004). Reversal is not required, however, if the error is harmless. *See, e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003).

## III. Discussion

Mr. Figarelli maintains that he is disabled and therefore entitled to disability benefits under the Social Security Act; alternatively, he seeks a remand to the Commissioner for further administrative proceedings. *See* Compl.

### A. Legal Framework

Under the Social Security Act, a person is "disabled" only if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). The disability must be sufficiently severe that the claimant cannot return to his prior job and is not capable of

5

engaging in any other substantial gainful work that exists in the national economy. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since his alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the SSA regulations as presumptively disabling; (4) whether the claimant's RFC leaves him unable to perform the requirements of his past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe*, 425 F.3d at 352. "The claimant bears the burden of proof at steps one through four." *Id*. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id*.

**B. Legal analysis**

Mr. Figarelli argues that the ALJ improperly assessed his visual limitations, failed to properly evaluate his symptoms, failed to account for certain limitations in the hypothetical posed to the vocational expert and RFC, improperly evaluated his

6

ability to perform past work, and failed to adequately demonstrate that a significant number of jobs exist in the economy as required by step five of the evaluation process. The Court will address each argument in turn.

### 1. Whether the ALJ properly assessed Mr. Figarelli's visual limitations

Between steps three and four of the five-step sequential evaluation process, the ALJ must assess a claimant's residual functional capacity (RFC)—that is, the most a claimant can do notwithstanding his or her limitations. Social Security Ruling 96-8p. As the RFC assessment must be based solely on the claimant's impairments, it is essential that the ALJ supports his RFC finding with evidence from the record. *See Id*. Mr. Figarelli argues that the ALJ's RFC finding regarding his visual limitations lacks support from the record, thus compelling a remand. The Court agrees.

The ALJ here determined that Mr. Figarelli retained the residual functional capacity to perform a full range of work except that "he is limited to occupations that do not require fine visual acuity, require working with small objects, or reading fine print or computer screens." Tr. 19. It is clear from the record that Mr. Figarelli suffers from visual limitations: he was hospitalized for hypertension and suffered end organ damage to his eyes as a result; he was diagnosed with hypertensive retinopathy and optic atrophy; and vision in his right eye had declined to 20/200. *See* Tr. 503-504; 677; 474. What is not clear is the ALJ's reasoning for only restricting Mr. Figarelli from occupations requiring him to read "fine print" when the evidence suggests that Mr. Figarelli may be even more limited than that.

7

An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." SSR 96-8p. In his discussion regarding his RFC finding, the ALJ stated that he assigned significant weight to State Agency physicians Drs. Chan and Khorshidi, who both opined that Mr. Figarelli had no exertional limitations and that his visual impairment was non-severe. Tr. 22. Although the ALJ declined to fully adopt the State Agency physicians' opinions—finding that Mr. Figarelli's visual impairment was indeed severe and necessitated visual restrictions—the ALJ nonetheless failed to ground said restrictions in the record.

The ALJ restricted Mr. Figarelli from jobs that required him to read "fine print," but the ALJ cited no opinion evidence, treatment notes, laboratory findings, etc., that he may have relied on to support that conclusion. *See* Tr. 19-23. The Wisconsin Division of Vocational Rehabilitation (DVR) assessed that Mr. Figarelli's vision using both eyes showed him able to read print at 16" at 54-point font. Tr. 403. As Mr. Figarelli's vision continued to decline after the DVR assessment which took place in July 2015, Tr. 677, there is no evidence to suggest that Mr. Figarelli should be only restricted from reading "fine print" as the ALJ concluded. Accordingly, the ALJ failed to "build an accurate and logical bridge between the evidence and the result," thus requiring a remand. *Beardsley*, 758 F.3d at 837.

**2. Whether the ALJ properly assessed Mr. Figarelli's symptoms**

When considering a claimant's symptoms, the ALJ must follow a two-step process. *See* Social Security Ruling 16-3p; *See also* 20 C.F.R. § 404.1529. First, the ALJ must determine whether the individual has "a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Second, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms such as pain, and determine the extent to which an individual's symptoms limits his or her ability to perform work-related activities." *Id*.

An ALJ's appraisal of claimants' assertions regarding their symptoms "is entitled to deference" and will not be upset unless it is "'patently wrong,'" *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (quoting Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2013)), or is "divorced from the facts contained in the record," *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). "Further, the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citations omitted).

The ALJ found that Mr. Figarelli's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence in the record. Tr. 20. Mr. Figarelli criticizes the ALJ for violating Social Security Ruling16-3p which requires the ALJ to "explain which of an individual's symptoms [he] found

9

consistent or inconsistent with the evidence." SSR 16-3p. The Commissioner contends that "the ALJ need only provide reasons based on the record as a whole why the claimant's testimony was not fully credited." Def.'s Mem. 6. Even if the Court agreed with the Commissioner that the ALJ only needed to provide reasons for not crediting the claimant's testimony, a remand on this issue is still compulsory as many of the reasons that the ALJ did provide cannot stand.

In finding that Mr. Figarelli's statements concerning the limiting effects of his symptoms were not entirely consistent with the record, the ALJ relied on the following: that Mr. Figarelli acknowledged his need to work; that he stabilized after his hospitalization; that he was encouraged to resume his normal activities; that he was not restricted from driving if he felt comfortable; and no medically acceptable treating source opined that Mr. Figarelli was unable to sustain work activities. Tr. 21; Tr. 23. While some of the reasons the ALJ provided to discount Mr. Figarelli's credibility are permitted, several others are not.

*Need to work*. The ALJ found that Mr. Figarelli was not as limited by his symptoms as he purported because he reported to DVR that he was interested in work in janitorial services, kitchen work, and stocking. Tr. 21; Tr.651. From this, the ALJ concluded that Mr. Figarelli acknowledged that he was capable of working. Tr. 21. As Mr. Figarelli points out, however, "the Seventh Circuit has held that a Plaintiff's necessity to work out of financial desperation does not mean that one is actually fit to work." Tr. 16-17; *Allen v. Colvin*, 2014 WL 1017855, at *10 (W.D. Wis. Mar. 17, 2014) (citing *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir.1998)).

10

There is an abundance of evidence in the record to show that Mr. Figarelli was indeed facing financial desperation: along with his request to receive a hearing before an ALJ, Mr. Figarelli requested a "Dire Need" due to his financial situation and submitted a copy of his eviction notice; at the hearing before the ALJ Mr. Figarelli testified that he was going to be kicked out of his home, was afraid of being homeless, and that he was selling his personal items to "try and stay afloat"; and his interactions with DVR were predicated on his inability to pay rent. Tr. 170-71; Tr. 46, 56, 59; Tr. 312; Tr. 346. Given the evidence in the record, it was unreasonable for the ALJ to conclude that Mr. Figarelli's active search for work indicated that he was capable of working.

*Normal activities*. The ALJ further reasoned that Mr. Figarelli was not as limited as he claimed because he was encouraged by his cardiologist, Dr. Moran, to continue his normal activities. Tr. 21, 23; *see* Tr. 618. It is generally permissible for an ALJ to rely on a claimant's daily activities when making a credibility determination. SSR 16-3p. At the same time, it is incumbent on an ALJ to assess those daily activities accurately and fulsomely. That did not occur.

Instead, the ALJ relied solely on the fact that Mr. Figarelli was encouraged to resume his normal activities to support his RFC finding. The ALJ did not go further than that. Yet, Mr. Figarelli testified that he always has to shop with assistance; that he only cooks with a microwave because he has a hard time seeing the dial on his stove; that he has someone else organize his medications and add bigger labels so he could read them; that he cannot see himself in the mirror when he shaves and

11

has to feel his face to know if he did okay; and that he doesn't socialize because he has no way of getting around. Tr. 46-48. When relying on a claimant's daily activities to refute his credibility, "an ALJ cannot disregard a claimant's limitations in performing household activities." *Moss v. Astrue*, 555 F.3d 556, 5652 (7th Cir. 2009). Moreover, the Seventh Circuit has specifically held that a claimant's "ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern work-place." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011).

*Treating source opinion*. Additionally, the ALJ discounted Mr. Figarelli's credibility because no medically acceptable treating source opined that the claimant was unable to sustain work activities on a regular and continuous basis. Tr. 23. As Mr. Figarelli indicates, however, "the absence of major work restrictions in [the] medical records does not illuminate the question of credibility." Pl.'s Br. 17; *see Eskew v. Astrue*, 462 Fed. Appx. 613, 616 (7th Cir 2011). Further, although the ALJ stated that no treating source opined as to Mr. Figarelli's ability to sustain work, the ALJ inexplicably neglected to mention that Dr. Fugette, Mr. Figarelli's evaluating psychologist, opined that Mr. Figarelli was severely limited in his ability to obtain and maintain employment. Tr. 369.

For the abovementioned reasons, the ALJ's credibility assessment is flawed. An erroneous credibility finding is subject to a remand.

   3. **Whether the ALJ erred by not accounting for certain limitations in the hypothetical posed to the vocational expert and RFC assessment**

12

Mr. Figarelli argues that the ALJ failed to account for his mental limitations in the hypothetical posed to the vocational expert as well as in his RFC determination. At steps four and five of the sequential evaluation process, an ALJ is required to determine (a) whether a claimant's impairments prevent him from doing his past relevant work and (b) whether the claimant's impairments prevent him from performing other work that exists in the national economy, considering his RFC. *See* SSR 00-4p. To make these findings, an ALJ may ask a vocational expert (VE) to "offer expert testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments(s) can meet the demands of the claimant's previous work." 20 C.F.R. § 416.960(b)(2). An ALJ is required to use the same RFC assessment when deciding if the claimant can adjust to any other work. *See* § 416.960(c).

With regard to Mr. Figarelli's mental limitations, the ALJ posed a hypothetical to the vocational expert, asking her to assume that the individual in question would be able to understand, remember, and carry out simple instructions and be limited to performing simple, routine tasks. Tr. 66. Mr. Figarelli maintains that the ALJ's hypothetical question was defective because it failed to account for his moderate limitations in the areas of concentration, persistence, or pace.

It is well settled in this Circuit that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir.

2015). "Among the mental limitations that the vocational expert must consider are deficiencies of concentration, persistence, or pace." *Id.*

Mr. Figarelli's medical records document his neurodevelopmental disorder through multiple tests administered by the DVR. Tr. 366. At step three of the sequential analysis, the ALJ attributed moderate limitation to Mr. Figarelli in the areas of concentration, persistence, and pace, citing the DVR psychological evaluation of Mr. Figarelli as support. Tr. 19. Nonetheless, in both his hypothetical posed to the VE and in his RFC assessment, the ALJ made no mention of Mr. Figarelli's moderate limitations in concentration, persistence, or pace. Instead, the ALJ asked the vocational expert to assume that an individual was limited to performing simple, routine tasks—the same limitations he included in Mr. Figarelli's RFC. Tr. 66; Tr. 19.

To be sure, an ALJ is not required to use the exact terminology of "concentration, persistence, or pace" in a hypothetical. Nevertheless, the court has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks . . . adequately captures . . . limitations in concentration, persistence, and pace." *Varga*, 794 F.3d at 814. The ALJ's failure to capture these key limitations in the hypothetical posed to the vocational expert, and subsequently in his RFC determination, mandates remand.

### 4. Whether the ALJ properly assessed Mr. Figarelli's ability to perform his past work

At step four of the sequential evaluation process, the ALJ must determine whether the claimant has the residual functional capacity to perform the

14

requirements of his past relevant work, i.e. work that the claimant has performed within the past fifteen years. 20 C.F.R. § 404.1520. Mr. Figarelli argues that the ALJ erred when he failed to compare the requirements of Mr. Figarelli's past work as a housekeeper to Mr. Figarelli's present abilities. Pl.'s Br. 20. The Commissioner, on the other hand, contends that the vocational expert's testimony is substantial evidence that Mr. Figarelli could still perform his past relevant work and that the ALJ's finding should be sustained. The law in the Seventh Circuit supports Mr. Figarelli's argument.

To determine whether a claimant is physically capable for returning to his or her past relevant work, the ALJ "must ascertain the demands of that work in relation to the claimant's present physical capacities." *Strittmatter v. Scheweiker*, 729 F.2d 507 (7th Cir. 1984). In his evaluation of whether Mr. Figarelli could perform his past relevant work as a housekeeper/cleaner, the ALJ here stated that he compared the claimant's residual functional capacity with the physical demands of his past work and found that Mr. Figarelli remained able to perform it as actually and generally performed. Tr. 23. The ALJ included no further explanation of his conclusion.

The ALJ's discussion in this regard is impermissibly perfunctory. He does not define the requirements of Mr. Figarelli's past work, and, given the ALJ'sbrief discussion, it is impossible to tell whether he actually compared those demands to Mr. Figarelli's present capabilities. This lack of adequate discussion of the issue alone requires a remand. *Moore*, 743 F.3d at 1121. The Commissioner, however,

argues that the ALJ's acceptance of the Vocational Expert's testimony is enough as the VE "plainly considered how Plaintiff's past work is performed in the national economy by providing a representative code from the Dictionary of Occupational Titles" and "listened to Plaintiff's testimony to familiarize herself with his past work." Def.'s Mem. 11.

The Commissioner makes a valid point: an ALJ may use a vocational expert's testimony to obtain evidence to determine whether a claimant is able to perform his or her past relevant work; however, this testimony must be given *in light of* the claimant's RFC. *See* 20 C.F.R. § 404. 1560(2). As discussed in section three of this opinion, the ALJ erred when posing his hypothetical to the VE by not accounting for Mr. Figarelli's moderate limitations in concentration, persistence, and pace. Since the VE opined as to whether Mr. Figarelli would be able to perform his past relevant work based on a flawed hypothetical, without further analysis from the ALJ regarding how Mr. Figarelli's past work compares to his present abilities, it is difficult to ascertain whether the ALJ's finding is supported by substantial evidence. Accordingly, a remand is required.

### 5. Whether the ALJ's step five finding is supported by substantial evidence

Step five of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. 404.1520. To support a finding that an individual is not disabled at this step, the ALJ has the burden of providing evidence

that other work exists in significant numbers in the national economy that the claimant can perform. 20 C.F.R. 404.1560(c). "The testimony of a VE can constitute substantial evidence to support the ALJ's step five finding, but only if that testimony is reliable." *Russell v. Berryhill*, 2017 WL 3704354, at *4 (S.D. Ill. Aug. 28, 2017) (citing *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004)). Mr. Figarelli contests the reliability of the vocational expert's testimony and argues that because the ALJ did not address or resolve the issue, the ALJ's decision at step five is unsupported. Pl.'s Br. 21-22. The Commissioner maintains that substantial evidence supports the ALJ's finding because the ALJ relied on the Medical-Vocational Guidelines to find Mr. Figarelli not disabled at step five. Def.'s Mem. 15. The law is on the side of Mr. Figarelli.

At the hearing before the ALJ, the vocational expert testified that, given Mr. Figarelli's RFC, age, and work experience, he would be able to perform the requirements of representative occupations such as floor waxer, with 120,000 jobs existing nationally; cleaner, with 250,000 jobs existing nationally; and laundry worker, with 55,000 jobs existing nationally. Tr. 24; *see also* Tr. 66. Through cross-examination, Mr. Figarelli's attorney asked the VE how she came up with those numbers for the representative occupations, to which the VE responded that she used Job Browser Pro and the Bureau of Labor and Statistics. Tr. 71. Mr. Figarelli's attorney subsequently objected to the reliability of the software program the VE stated she used to generate the numbers for the jobs about which she testified. Tr.

21; Tr. 73. The ALJ asked no further questions of the VE and concluded the hearing. Tr. 73.

Contrary to the Commissioner's argument, in his written decision the ALJ distinctly relied on the vocational expert's testimony to conclude that Mr. Figarelli was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Tr. 24. Problematically, the ALJ did not explain how he resolved Mr. Figarelli's objections to the reliability of said testimony. "If the basis of the vocational expert's conclusions is questioned at the hearing . . . then the ALJ should make an inquiry to find out whether the purported expert's conclusions are reliable." *Russell*, 2017 WL 3704354, at *4 (S.D. Ill. Aug. 28, 2017) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)).

Although the ALJ stated that he determined the VE's testimony to be consistent with the information contained in the Dictionary of Occupational Titles (DOT), Tr. 24, the DOT "contains no statistics regarding the number of jobs in a given job category that exists in the local, state, or national economy." *Russell*, 2017 WL 3704354, at *4 (S.D. Ill. Aug. 28, 2017). Therefore, finding that the VE's testimony is consistent with the DOT does nothing "to establish the reliability of the VE's conclusions as to the number of jobs." *Id*.

After Mr. Figarelli objected to the basis of the VE's testimony, the ALJ was obligated to make an inquiry to determine whether the VE's conclusion were reliable. *Russell*, 2017 WL 3704354, at *4 (S.D. Ill. Aug. 28, 2017) (citing *Donahue*, 279 F.3d 441, 446 (7th Cir. 2002)). Because the ALJ did nothing to establish that

the Job Browser Pro information was reliable, either by asking the VE a few direct questions regarding the reliability of her testimony or through other means, a remand on this issue is required.

## IV. Conclusion

For all the foregoing reasons, the Court finds that the ALJ committed reversible error in determining that Mr. Figarelli was not disabled as of December 12, 2014. The Court therefore will reverse that part of the ALJ's decision denying Mr. Figarellli's claim for disability benefits and remand the case to the Commissioner for further proceedings consistent with this Decision and Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of December, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge